UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON JACKSON,

    Plaintiff,

v.                                               Case No. 1:14-cv-600
                                                  Hon. Robert J. Jonker

DANIEL HEYNS and
DEWAYNE BURTON,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the Court on a motion for summary judgment filed by defendants Daniel H. Heyns and DeWayne Burton (docket no. 25). Defendants' motion is unopposed.[1]

**I.    Plaintiff's complaint**

At all times relevant to this action, plaintiff was a prisoner held by the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU). Plaintiff alleged that he wrote a grievance on June 6, 2013 because MTU did not accommodate his "Buddhist vegan diet." Compl. (docket no. 1 at p. ID# 3). Plaintiff, who is in an "R.T.P" (residential treatment program), stated that he wrote to defendants Warden DeWayne Burton and MDOC Director Daniel Heyns, requesting transfer to a facility that had both a "vegan diet" and "mental health." *Id.* For his relief, plaintiff wants: $20,000.00 for the two years he did not have a vegan diet

---

[1] Plaintiff did not filed a response to the motion for summary judgment, despite the fact that the Court granted his motion for an extension of time to file a response to the motion. *See* Order (docket no. 34).

and "could not fully practice [his] religion" and a $400.00 filing fee. *Id.* at p. ID# 4. Based on his allegations, the Court construes plaintiff's complaint as raising a claim under the First Amendment and the Religious Land Use and Institutional Persons Act, 42 U.S.C. § 2000cc-2(a).[2] Defendants seek summary judgment on various grounds including lack of exhaustion of administrative remedies.

> II. **Summary judgment**

> A. **Legal standard**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

---

[2] The Court notes that plaintiff also seeks $30,000 "for getting gased [sic]", $600.00 for damage to or loss of his property, and "a decree on M.D.O.C. telling them that they have to order me a Big Black G.E. Radio and I can have it in there [sic] facility and no policy can stop me from haveing [sic] it." *Id*. Plaintiff's complaint does not set forth any allegations with respect to property loss or getting gassed. These claims for relief appear related to the other six lawsuits which plaintiff filed during the summer of 2014 (all of which have been dismissed). *See Jackson v. Heyns*, 1:14-cv-645 (closed August 7, 2014); *Jackson v. Heyns*, 1:14-cv-741 (closed August 20, 2014); *Jackson v. Snyder*, 1:14-cv-753 (closed August 7, 2014); *Jackson v. Heyns*, 1:14-cv-780 (closed March 27, 2015); *Jackson v. Heyns*, 1:14-cv-837 (closed September 10, 2014); and *Jackson v. Heyns*, 1:14-cv-838 (closed October 7, 2014). In addition, the Court will not consider plaintiff's attachments and letters regarding harassment by one or more "foreign born residents" and "aliens" who are harassing him. The Court dismissed similar claims in plaintiff's previously filed lawsuits. *See id.*

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As discussed, defendants' motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

### III. Exhaustion of administrative remedies

#### A. Legal standard

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative

3

remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### B. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where,

4

> why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### C. Plaintiff's grievances

Defendants contend that plaintiff has filed ten grievances through the Step III appeal while incarcerated at MTU, "none of which involve the denial a [sic] Buddhist vegan diet." Defendants' Brief (docket no. 26 at p. ID# 72); MDOC Prisoner Step III Grievance Report (docket no. 26-3 at pp. ID## 91-92). Defendants did not address the individual grievances but simply referred the Court to their Exhibit B which consisted of a Step III grievance report and dozens of pages of grievances. Defendants' Brief at p. ID# 72; Grievances (docket no. 26-3 at pp. ID## 95-140; docket no. 26-4 at pp. ID## 141-60). Had defendants addressed the individual grievances, they might have noted that one of the grievances exhausted through Step III addressed the issue of plaintiff's vegan diet. *See* MTU-09-10-685-20e ("685") (plaintiff complains that food service will not give him a strict vegetarian diet free of animal and dairy products consistent with his Buddhist faith) (docket no. 26-4 at p. ID# 160). Nevertheless, the record reflects that this grievance, which involved an incident date of October 7, 2009, was denied on procedural grounds because plaintiff failed to make a reasonable attempt to resolve the issue with staff involved prior to filing the

5

grievance as required in Policy Directive 05.03.150. *See* Grievance no. 685 at pp. ID## 157-60. Accordingly, Grievance no. 685 was not properly exhausted. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91.

In addition, although plaintiff alleged that he filed a grievance on June 6, 2013 complaining that he was "not getting [his] vegan diet," there is no evidence that plaintiff filed or exhausted such a grievance. Eight of the grievances which plaintiff exhausted at MTU made no mention of a vegan diet: MTU-14-03-0343-15f (plaintiff complained that he was not getting his mail) (docket no. 26-3 at p. ID# 98); MTU-14-02-0239-17a (plaintiff complained that he was being harassed and his cell searched) (docket no. 26-3 at p. ID# 103); MTU-14-03-0328-28a (plaintiff complained that Officer Macomb was taking his property and retaliating against him) (docket no. 26-3 at p. ID# 111); MTU-14-01-0092-28b (plaintiff complained that he was being harassed and that his property was missing) (docket no. 26-3 at p. ID# 118); MTU-14-01-0009-14b (plaintiff complained that the prison library had a limited range of subjects) (docket no. 26-3 at p. ID# 123); MTU-14-01-0780-12B (plaintiff complained that his shots hurt and that when he refuses to get shots he gets gassed with chemical agents) (docket no. 26-3 at p. ID# 137); MTU-13-12-1583-14e (plaintiff complained that he is not getting his law library call out) (docket no. 26-4 at p. ID# 144); and, MTU-13-12-1584-12B ("Mental health and Doctor Livingston is [sic] experimenting on me with medication and foreign-born resident in my body") (docket no. 26-4 at p. ID# 151). Contrary to plaintiff's allegations, one grievance includes a complaint that he was being served vegan meals but did not like "soy meat". *See* MTU-14-01-0091-28c (plaintiff complained that officers were taking his property and retaliating against him, that the grievance coordinator not processing grievances, that he was getting gassed with chemical agents for not taking off his clothes, and that

he had a problem with the food service giving him "soy meat for every VEGGIE MEAL") (docket no. 26-3 at p. ID# 130).  Based on this undisputed record, plaintiff has not properly exhausted any grievances with respect to being denied a Buddhist vegan diet.  *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91.  Accordingly, defendants' motion for summary judgment should be granted.[3]

### IV.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 25) be **GRANTED** and that this action be **TERMINATED**.

Dated:  August 24, 2015            /s/ Ray Kent
                                    RAY KENT
                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[3] Because plaintiff failed to properly exhaust any grievance related to this cause of action, it was unnecessary for the undersigned to address defendants' other grounds for dismissal.